In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2821

REGER DEVELOPMENT, LLC,

*Plaintiff-Appellant,*

*v.*

NATIONAL CITY BANK,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08-CV-6200—**Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 9, 2009—DECIDED JANUARY 20, 2010

Before FLAUM, WILLIAMS, and SYKES, *Circuit Judges.*

FLAUM, *Circuit Judge.* Reger Development borrowed money from National City through a revolving line of credit supported by a promissory note. Then, when National City discussed the possibility of calling the note, Reger Development sued the bank for breach of contract and fraud. After reviewing the terms of the governing contract, the district court dismissed the complaint. We now affirm.

## I. Background

This is a diversity case governed by Illinois law. For the purposes of this appeal, defendants-appellees accept as true the allegations contained in appellant's complaint. Plaintiff-appellant Reger Development, LLC ("Reger Development") is an Illinois limited liability company involved in real estate development. Kevin Reger is Reger Development's principal and sole member. Defendant-appellee National City Bank ("National City"), was headquartered in Cleveland, Ohio, at the time this lawsuit commenced and had lent money to Reger Development for several previous projects. In June 2007, National City offered the company a line of credit to fund potential development opportunities. On June 25, 2007, Kevin Reger met with Erica Duncan, a National City representative, to discuss the loan. At some point, when Reger asked about changing the terms of the arrangement, Duncan responded that the documents National City provided were nonnegotiable. Reger Development then executed the form contract, which was structured as a promissory note ("Note") coupled with a commercial guaranty by Kevin Reger in his individual capacity for the debt of his business entity. Reger Development at-tached both contracts to its initial complaint.

The main question in this case is whether the Note entitles National City to demand payment from Reger Development at will. To this end, several excerpts from the two-page contract are particularly important. The first clause in the Note reads:

> PROMISE TO PAY: Reger Development, LLC ("Bor-rower") promises to pay to National City Bank

("Lender"), or order, in lawful money of the United States of America, on demand, the principal amount of Seven Hundred Fifty Thousand & 00/100 Dollars ($750,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

PAYMENT: Borrower will pay this loan in full immediately upon Lender's demand. Borrower will pay regular monthly payments of all accrued unpaid Interest due as of each payment date, beginning July 25, 2007, with all subsequent Interest payments to be due on the same day of each month after that.

. . .

FAILURE TO PAY ON DEMAND. Notwithstanding any other provision set forth in this Note, if (a) any principal owing under this Note remains unpaid after Lender shall have given Borrower notice of demand for payment thereof or after the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or (b) any accrued Interest under this Note remains unpaid after the due date of that Interest, then, and in each such case, all unpaid principal of this Note shall bear Interest at a rate equal to three percent (3%) per annum above the rate that would otherwise be applicable. Interest, whether prior to or after judgment by a court of competent jurisdiction, shall continue upon the outstanding balance until paid in full, at

the higher of the rate provided in this Note or the rate otherwise permitted by law.

The Note proceeds to reference payment on lender's demand several times in other provisions. It also features a "NO COMMITMENT" clause that states: "NOTWITH-STANDING ANY PROVISION OR INFERENCE TO THE CONTRARY, LENDER SHALL HAVE NO OBLIGA-TION TO EXTEND ANY CREDIT TO OR FOR THE ACCOUNT OF BORROWER BY REASON OF THIS NOTE." The contract then includes integration language defining it as the final and complete agreement between parties. The Note is governed by federal and Illinois law, to the extent the former does not preempt the latter. Language above the signature line specifies in capital letters that the borrower has read and understood the terms of the document. Reger Development paid a $5000 closing fee for the line of credit.

About a year after Reger Development executed the contract, National City requested updated personal financial statements and tax returns pursuant to a clause in the Note entitling the bank to do so. The borrower complied. Through that point, Reger Development had made timely interest payments on the loan. On August 19, 2008, National City asked the company to pay down $125,000 towards the principal of the line of credit, which appellant did the next business day. Then, on September 9, 2008, National City asked that Reger Development "term out" $300,000 of the Note by having one of Kevin Reger's other businesses agree to take out a three-year loan in that amount secured by a second mortgage on some real

estate. National City also notified appellant that it would be reducing the amount of cash available through the line of credit from $750,000 to between $400,000 and $500,000.

Kevin Reger "expressed surprise" about these developments and asked if National City would call the line of credit if Reger Development did not agree to the requests. The bank acknowledged that Reger Development was not in default but stated that "there is a possibility that we may demand payment of the line."

Reger Development then filed a complaint in Illinois state court accusing National City of breaching the terms of the Note. The company also alleged that National City used the form promissory note contracts to perpetuate a fraudulent scheme in which the bank fooled people into taking out loans by concealing the fact that the principal could be called on demand. Appellee removed the case to the Northern District of Illinois under diversity jurisdiction and then successfully moved to dismiss the complaint for failure to state a cause of action under which relief could be granted. The district court rejected Reger Development's Motion for Reconsideration under Fed. R. Civ. P. 59(e). Reger Development now appeals from both the substantive judgment and denial of the motion to reconsider.

## II. Discussion

We review the district court's grant of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) de novo. *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). When evaluating the sufficiency of the complaint, we construe it in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in her favor. *Id.* We review the district court's denial of Reger Development's motion for reconsideration for abuse of discretion and reverse "only if no reasonable person could agree with that decision." *Schor v. City of Chi.*, 576 F.3d 775, 780 (7th Cir. 2009). In his jurisdictional statement, Reger Development announces that it is appealing both the district court's decision to dismiss its original complaint and the district court's subsequent denial of Reger Development's motion for reconsideration. However, as the appellee points out, the remainder of Reger Development's brief never identifies the standard of review for a district court's 59(e) ruling, mentions the denial, or makes any substantive arguments that would require us to examine that decision. We treat this silence as a waiver of Reger Development's right to contest the 59(e) ruling, though we note that the switch in posture changes nothing about the outcome of this appeal.

The Supreme Court has described the bar that a complaint must clear for purposes of Rule 12(b)(6) as follows: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A "formulaic recitation of the elements of a cause of action will not do." *Id*. Nonetheless, a plaintiff must provide "only 'enough detail to

give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief.'" *Tamayo*, 526 F.3d at 1083. Furthermore, plaintiffs must plead their accusations of fraud with particularity. Fed. R. Civ. P. 9(b); *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993) (stating that particularity requires the party to specify the "who, what, when, where, and how" of the alleged fraudulent act). We consider documents attached to the complaint as part of the complaint itself. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999). Such documents may permit the court to determine that the plaintiff is not entitled to judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009).

## A. Reger Development's Breach of Contract Claim

Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004). We construe contracts by giving their unambiguous terms clear and ordinary meaning, *Reynolds v. Coleman*, 527 N.E.2d 897, 902 (Ill. App. Ct. 1988), in an effort to determine the parties' intent. *Harrison v. Sears, Roebuck & Co.*, 546 N.E.2d 248, 253 (Ill. App. Ct. 1989). During our review, we do not look at any one contract provision in isolation; instead, we read the document as

a whole. *Martindell v. Lake Shore Nat'l Bank*, 154 N.E.2d 683, 689 (Ill. 1958).

While Illinois law generally holds that "a covenant of fair dealing and good faith is implied into every contract absent express disavowal," *Foster Enter., Inc. v. Germania Fed. Sav. & Loan Ass'n*, 421 N.E.2d 1375, 1380 (Ill. App. Ct. 1981), the duty to act in good faith does not apply to lenders seeking payment on demand notes. *See N.W.I. Int'l, Inc. v. Edgewood Bank*, 684 N.E.2d 401, 409 (Ill. App. Ct. 1997); *see also* 810 ILCS 5/1-309 cmt. ("Obviously this section [which imposes a requirement that lenders utilize their rights under acceleration clauses only when they have a good-faith belief that the prospect of performance is impaired] has no application to demand instruments or obligations whose very nature permits call at any time with or without reason. This section applies only to an obligation of payment or performance which in the first instance is due at a future date."). In light of this controlling law, appellant's complaint appears vacuous. Reger Development's allegations are "that National City breached the Contract Documents by arbitrarily and capriciously (1) demanding payment under the Line of Credit even though Reger Development was in good standing and (2) unilaterally changing and attempting to change the fundamental terms of the Contract Documents without Reger Development's consent." Reger Development attempts to substantiate the first part of the breach claim by pointing to several provisions in the Note that it believes to be fundamentally inconsistent with the nature of a demand instrument. These include the "INTEREST AFTER DE-

FAULT" provision, which reads, in relevant part, "[u]pon default, including failure to pay upon final maturity, the interest rate on this Note shall be increased by adding a 2.000 percentage point margin;" the prepayment clause, which allows the borrower to pay down "all or a portion of the amount owed earlier than it is due;" and the clause that grants National City the right to access the borrower's financial information. Reger Development describes the latter as a "financial insecurity" provision that conditions the right to demand payment on some economic cause.

We are not persuaded by the suggestion that these references to due dates and default somehow overpower the repeated, explicit contract language setting forth the lender's right to demand payment at any time. A bank that wishes to call the Note can specify some future date on which it needs payment as a "due date." Failure to pay at that point in time, as well as failure to make monthly interest payments required by the Note, would constitute default, but the mere use of the terms "due date" or "default" would not alter the nature of the agreement. Similarly, the "PREPAYMENT" provision cannot bear the interpretive load that appellant wants to place on its shoulders. The clause reads: "Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid Interest." Both its content and placement (immediately following the "payment" and "variable interest rate" clauses) are innocuous. The language

merely reinforces National City's right to collect scheduled monthly interest payments and does not deviate from the structure of a demand note.

Reger Development does cite to decisions from other jurisdictions holding that specified events of default may neuter contractual language describing a loan as payable on demand. *See, e.g.*, *Bank One, Tex., N.A. v. Taylor*, 970 F.2d 16, 32 (5th Cir. 1992); *Reid v. Key Bank of S. Me., Inc.*, 821 F.2d 9, 14 (1st Cir. 1987); *New Bank of New England, N.A. v. J.T. Enter.*, 1992 WL 122704, *2 (D. Mass. 1992). These authorities describe instruments with traits that look out of place in a demand note. Because the National City Note lacks these anomalous features, the cases have little bearing on our interpretation of the present contract. For example, *Bank One, Texas* discusses notes secured by a car and a boat that specified a payment schedule and included an acceleration clause. While the National City requirement for monthly interest payments does bear some semblance to a comprehensive payment schedule, a real schedule would cover principal payments so as not to create the impression that the lender is giving away money. Furthermore, the *Bank One, Texas* court actually distinguished the contract before it from one that a Texas appellate court identified as a demand note, *see Conte v. Greater Houston Bank*, 641 S.W.2d 411 (Tex. App. 1982), because the Bank One Note featured an acceleration clause conspicuously absent from both the *Conte* instrument and National City Note. Such a provision would indeed cast doubt on the intent of the parties to create a callable loan for the reasons Reger Development set

forth—if the lender can demand full payment at any time, it wouldn't need to "accelerate" the loan maturity—but these concerns can't gain traction without support from contractual language. As described above, mere references to due dates do not suffice.

Similarly, *Reid* dealt with a case where the lender's president testified that a "demand" term in a clause demanding a fixed-sum payment did not mean what it said in the context of provisions conditioning such accelerated payments and enumerating default events. Given the distinct terms of the National City Note, we find the logic of the *Reid* court to be inapplicable to the case at hand. Viewed as a whole in the light most favorable to the nonmoving party, the Note before us is plainly a demand instrument entitling National City to collect its loan whenever it wants. Furthermore, adequate consideration passed during the transaction because National City actually funded the credit line and permitted appellant to draw down funds in return for the $5000 closing fee. *Mid-Town Petroleum, Inc. v. Gowen*, 611 N.E.2d 1221, 1227 (Ill. App. Ct. 1993) ("[A] peppercorn can be considered sufficient consideration to support a contract in a court of law . . . .").

Finally, National City's reiteration of its contractual right to demand payment during negotiations with Reger Development does not amount to a breach of the covenant to avoid modifications without consent of the borrower. The Note provides that "All such parties [who sign the Note] also agree that Lender may modify this loan without the consent of or notice to anyone other

than the party with whom the modification is made." Reger Development claims that National City breached this covenant when the bank asked it to term out part of the line of credit, but National City did not actually impose any unilateral changes on the appellant. Rather, the bank presented Reger Development with two options: live by the terms of the Note and face the possibility of a call on the loan, or agree to restructure the terms of credit. The second alternative required appellant's consent, as stated in the governing contract. The bank's decision to hold off on taking full advantage of its legitimate powers until it could discuss less painful possibilities with its customer is not an impermissible threat and cannot give rise to any suit for breach. Reger Development's lone citation for the contrary proposition, *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990), is a vacated opinion discussing the duties of a bank under the bankruptcy code where this Court expressly endorsed the principle that good-faith restrictions do not bind demand-note lenders. *See id.* at 1357-58; *see also id.* at 1357 ("'Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith.'").

## B. Reger Development's Fraud Claim

To state a fraud claim under Illinois law, a plaintiff must allege that the defendant: (i) made a false statement of material fact; (ii) knew or believed the statement to be

false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff. *Redarowicz v. Ohlendorf*, 441 N.E.2d 324, 331 (Ill. 1982).

   Appellant asserts that

> The Contract Documents show that National City engaged in a scheme to defraud Reger Development . . . when National City drafted the purposefully ambiguous and misleading Promissory Note and other Contract Documents, which National City intended all along to call "on demand," but about which National City intentionally and fraudulently gave a much different impression to its borrowers.

We address only the first of several reasons why this position cannot stand in court: Reger Development's failure to plead intent with any semblance of particularity. To establish element (iii) of his fraud claim, appellant asks us to draw the inference

> that no reasonable borrower would have paid $5,000 to enter into a line of credit if it had been clearly drafted to provide that the note could be called at any time and for any reason whatsoever, including a bad reason. Thus, National City had to have drafted ambiguous documents so that National City could mislead its borrowers. That is the only explanation for the ambiguous and otherwise inexplicable terms that National City included regarding defaults, maturity dates and due dates.

As we stated above, the Note before us is neither ambiguous nor inexplicable. Rather, it is a straightforward demand instrument accompanied by a personal guaranty by the borrower's sole member. With respect to intent, we simply cannot draw the inference that Reger Development asks us to make without ignoring the contract altogether. While Illinois law permits parties to prove intent to deceive with circumstantial evidence, *see White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 549 (Ill. App. Ct. 2006), courts presume that transactions are fair and honest until shown to be otherwise, *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 855 (Ill. 2005). A "party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract." *N. Trust Co. v. VII S. Mich. Assocs*, 657 N.E.2d 1095, 1103 (Ill. App. Ct. 1995). The district court described several other flaws in Reger Development's fraud claim. We agree with the lower court's reasoning but see no need to reach those issues.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of National City's motion to dismiss the Reger Development complaint.