Brown v. TM Northlake Mall, LP, 2025 NCBC 13.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MASTER FILE 24CV032386-590

BIANCA JULIANNE BROWN,

        Plaintiff,

v.

TM NORTHLAKE MALL, LP, ET
AL.,

        Defendants.

THE ESTATE OF ARMANI
DONOVICK SPENCER, by and
through its Administratrix DONNA
KAY SPENCER,

        Plaintiff,

v.

TM NORTHLAKE MALL, LP, ET
AL.,

        Defendants.

**ORDER AND OPINION ON
MOTIONS TO DISMISS AND FOR
JUDGMENT ON THE PLEADINGS**

24CV032393-590
RELATED CASE

1. These consolidated cases arise from the same tragic event. In August 2022, an unknown assailant followed Bianca Brown and Armani Spencer as they left the Northlake Commons shopping center in Charlotte, North Carolina. The assailant then shot them in cold blood as they drove around the perimeter of neighboring Northlake Mall. Brown sustained severe injuries; Spencer died at the scene.

2. In these cases, Brown and Spencer's estate claim that the owners, managers, and security personnel of Northlake Commons and Northlake Mall had a duty to provide adequate security but negligently failed to do so. Defendants ARC

NCCHRNC001, LLC, Hiffman Asset Management, LLC, and S&S Management Group, LLC have either moved to dismiss the complaints under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure or moved for judgment on the pleadings under Rule 12(c). For the following reasons, the Court **DENIES** the motions.

> *Howard, Stallings, From, Atkins, Angell & Davis, P.A., by Robert Jessup and Matthew Langston, and Ramsay Law Firm, by Brian Curtis Hunt, for Plaintiffs Bianca Julianne Brown and The Estate of Armani Donovick Spencer.*

> *Teague Campbell Dennis & Gorham, LLP, by John Matthew Little and Daniel Thaddeus Perry, for Defendant Hiffman Asset Management, LLC d/b/a Hiffman National.*

> *Gallivan, White, & Boyd, P.A., by Christopher Mark Kelly, for Defendant S&S Management Group, LLC d/b/a/ Security Solutions of America.*

> *Goldberg Segalla LLP, by John I. Malone, for Defendant ARC NCCHRNC001, LLC.*

Conrad, Judge.

I.
BACKGROUND

3. The Court does not make findings of fact on motions under Rules 12(b)(6) and 12(c). The following background assumes that the allegations of the complaints, which are essentially identical, are true. For simplicity, citations throughout this opinion are drawn from Brown's complaint. (*See* Compl., ECF No. 10 [2024-CVS-32386-590].)

4. In recent years, crime has vexed Northlake Mall, Northlake Commons, and their surroundings. A public database shows more than a thousand reported crimes from 2017 to 2022, some involving rape, robbery, and murder. Patrons of Northlake

Mall and Northlake Commons have frequently voiced their concerns about security in online forums, pointing to "shootings in the parking lot area" and describing the mall's environs as a "[d]angerous place to be at night." One unhappy commenter asked rhetorically "WHERE is SECURITY???" and claimed to have been "chased down by someone in a black SUV, thinking I cut them off." An equally unhappy retail tenant likened the mall to "a warzone." (Compl. ¶¶ 19 n.2, 24, 27.)

5. The attack that injured Brown and killed Spencer occurred soon after midnight on 13 August 2022. They had just left a restaurant in Northlake Commons and were driving away when "a reckless driver tailgat[ed] them from Northlake Commons into Northlake Mall." At a stoplight on mall grounds, the attacker pulled even with their vehicle, fired about twenty gunshots, and then fled. As alleged, "[a]t no point did security for either Northlake Commons or Northlake Mall respond" to the gunshots or otherwise intervene. (Compl. ¶¶ 29–32.)

6. Brown and Spencer's estate allege that this attack would not have happened had there been adequate security at Northlake Mall and Northlake Commons. As alleged, authorities for both properties were aware of the area's history of criminal activity and therefore had a duty to safeguard their customers. Brown and Spencer's estate claim that the owner (ARC), manager (Hiffman), and security provider (S&S) of Northlake Commons negligently breached that duty by failing to warn customers of the danger and failing to provide adequate security. Brown and Spencer's estate assert matching allegations and claims against Northlake Mall's owner, manager, and security provider. (*See* Compl. ¶¶ 38, 39, 50, 53.)

7.     ARC, Hiffman, and S&S contend that neither complaint sufficiently alleges negligence.  Together, they have filed six motions across the two cases, seeking dismissal of all claims or judgment on the pleadings.  (*See* ECF Nos. 2, 5, 43 [2024-CVS-32386-590]; ECF Nos. 3, 6, 47 [2024-CVS-32393-590].)  After full briefing and a hearing on 6 February 2025, the motions are ripe for decision.

II.
LEGAL STANDARD

8.     A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999) (citation and quotation marks omitted).  Dismissal is proper when "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (citation and quotation marks omitted).  In deciding the motion, the Court must treat all well-pleaded allegations as true and view the facts and permissible inferences in the light most favorable to the nonmoving party. *See, e.g.*, *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019).

9.     A motion for judgment on the pleadings "should be granted when a complaint fails to allege facts sufficient to state a cause of action . . . ." *Robertson v. Boyd*, 88 N.C. App. 437, 440 (1988).   "All well pleaded factual allegations in the nonmoving party's pleadings are taken as true and all contravening assertions in the movant's pleadings are taken as false." *Ragsdale v. Kennedy*, 286 N.C. 130, 137 (1974).

# III.
# ANALYSIS

10. "[O]rdinarily a possessor of land is not liable for injuries to invitees which are caused by the intentional criminal acts of third parties." *Murrow v. Daniels*, 321 N.C. 494, 500 (1988). There are exceptions, though. *See* Restatement (Second) of Torts § 344. When the landowner had "reason to know that there was a likelihood of conduct on the part of third persons which endangered the safety of his invitees, a duty to protect or warn the invitees could be imposed." *Foster v. Winston-Salem Jt. Venture*, 303 N.C. 636, 638–39 (1981) (endorsing section 344 of the Restatement). The test "is one of foreseeability." *Murrow*, 321 N.C. at 501. This does not mean that the plaintiff must allege or "prove that the defendant foresaw the injury in the exact form in which it occurred." *Foster*, 303 N.C. at 642. "The plaintiff need only show that in the exercise of reasonable care the defendant should have foreseen that some injury would result from his act or omission or that consequences of a generally injurious nature might have been expected." *Id.*

11. Consider, for example, the circumstances in *Foster*. That case involved an assault and robbery in a mall parking lot. The plaintiff claimed that the mall's owners "breached their duty to adequately patrol and provide security," alleging "that in the year preceding the assault upon her, at least twenty-nine incidents of crime were reported as having taken place in the mall parking lot." *Id.* at 641. The Supreme Court found "these allegations sufficient to state a cause of action against defendants in negligence." *Id.*

12.    The Court of Appeals reasoned similarly in *Connelly v. Family Inns of America, Inc.*, 141 N.C. App. 583 (2000). There, two men broke into a family's motel room as they slept, threatened to shoot them, and stole their cash and jewelry. The family sued the motel's owners and managers for failing to provide adequate security and offered evidence of about 100 cases of assault, larceny, and breaking and entering in the vicinity of the motel over the preceding five years. This evidence was sufficient not only "to raise a triable issue of fact as to the foreseeability of the attack upon plaintiffs," *id.* at 589, but also to support a reasonable inference "that if criminal incidents occurred so close to defendants' motel, the defendants were or should have been aware of those facts which should have prompted them to take adequate safety measures," *id.* at 591.

13.    The allegations here mirror those in *Foster* and *Connelly*. As alleged, in the five years before the deadly assault on Brown and Spencer, Northlake Mall and Northlake Commons witnessed over 1,000 crimes, with "assaults, forcible rapes, robberies, and murders" among them. (Compl. ¶ 24.) A great deal of notoriety surrounded these incidents. Customers took to online forums to complain about the lack of security and unsafe conditions, especially at night, and retail tenants terminated their leases and closed their stores due to similar concerns. (*See* Compl. ¶¶ 24, 27.) It is reasonable to infer from these alleged facts that ARC and Hiffman were or should have been aware "of the existence of a likelihood of injury to [their] customers from the criminal acts of third persons." *Foster*, 303 N.C. at 642.

14.     ARC and Hiffman do not dispute this.  They argue instead that the claims against them must be dismissed because the shooting took place on Northlake Mall property after Brown and Spencer had left Northlake Commons property.  Any duty to provide security, according to ARC and Hiffman, ended at the property line that divides Northlake Commons from Northlake Mall.

15.     It is true that a landowner's duty to exercise reasonable care in the maintenance of its premises "does not extend to guarding against injuries caused by dangerous conditions located" on someone else's property and "coincides exactly with the extent of the landowner's control of his property." *Lampkin v. Hous. Mgmt. Res. Inc.*, 220 N.C. App. 457, 461 (2012).  But as courts elsewhere have persuasively observed, "a property owner does not escape liability for an attack that begins on its premises simply because the victim moves outside the premises before the attack is completed." *Martin v. Six Flags Over Georgia II, L.P.*, 801 S.E.2d 24, 30–31 (Ga. 2017).  "If the injury-producing moment outside a business is in fact the culmination of a series of events that began inside, the outcome of the case should turn on something less artificial than the location of the property line." *Paynton v. Spuds, LLC*, 2014 U.S. Dist. LEXIS 92988, at *8 (E.D. Pa. July 9, 2014) (applying section 344 of the Restatement (Second) of Torts); *see also Hammond v. San Lo Leyte VFW Post #7515*, 2018 Kan. App. Unpub. LEXIS 743, at *12 (Kan. Ct. App. Sept. 28, 2018) (unpublished) ("We have found no case in which the existence of a duty and the breach of that duty in location A is negated by the fact that the resulting harm from the breach occurred in location B.").

16. The complaints allege that the attack on Brown and Spencer began in Northlake Commons. The attacker "loitered" there with "no legitimate business" purpose while "harassing lawful visitors." (Compl. ¶¶ 37, 40, 46.) Then, when Brown and Spencer started for home, the attacker began "driving recklessly" and "tailgating them from Northlake Commons into Northlake Mall," where the shooting occurred. (Compl. ¶¶ 30, 40.) Viewed in the light most favorable to Brown and Spencer's estate, these allegations tend to show that the shooting was the "culmination of a continuous string of events that were planned on [Northlake Commons] property, were executed at least in part on [Northlake Commons] property, and were the result of a failure by" ARC and Hiffman to exercise ordinary care to provide security for their patrons. *See Martin*, 801 S.E.2d at 30. Thus, the complaints adequately state claims for negligence. *See, e.g.*, *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1152 (7th Cir. 2010) (reversing dismissal of claim and concluding that plaintiff adequately alleged that bar owner "owed her a duty to protect her against the criminal attack by [third persons] if it actually knew of their alleged plan to sexually exploit her off premises"); *Paynton*, 2014 U.S. Dist. LEXIS 92988, at *7–8 (denying motion to dismiss in light of "nexus between events that occurred on defendants' premises and a subsequent assault that purportedly occurred in an unbroken chain of events almost immediately outside its door").

17. S&S makes a slightly different argument. As a contractor (as opposed to a landowner), the scope of its duty is limited by the terms of its contract to provide security services for Northlake Commons. *See Cassell v. Collins*, 344 N.C. 160, 163

(1996), *overruled on other grounds by Nelson v. Freeland*, 349 N.C. 615 (1998). Citing *Cassell*, S&S contends, first, that its contract imposes no obligation to patrol or provide security on Northlake Mall property and, second, that its contract does not require it to intervene to stop a violent attack anywhere, including on Northlake Commons property.

18. The first contention isn't persuasive for the reasons discussed above. The complaints allege that the attack on Brown and Spencer began in Northlake Commons. S&S may be liable for negligence in carrying out its duties onsite even if the consequences of its negligence materialized after Brown and Spencer drove offsite.

19. The second contention runs up against the standard of review. Neither side attached S&S's contract. Thus, all that is in the record concerning the contract is what the complaints allege about it: that S&S was obligated to "[d]iscover that criminal activity by third persons was occurring," "[e]xercise due care to reasonably prevent or control such criminal activity within" Northlake Commons, "[t]ake reasonable steps for the safety and protection of the lawful occupants," and "warn of known dangers." (Compl. ¶ 59; *see also* Compl. ¶ 34.) S&S allegedly shirked its duties because it failed "to properly secure, inspect, and patrol" Northlake Commons and "allow[ed] known trespassers, dangerous persons, armed persons, and unauthorized persons to enter" the premises. (Compl. ¶¶ 67, 69.) These allegations, which the Court must take as true, sufficiently identify the source of S&S's duty, the scope of that duty, and the claimed breach.

## IV.
## CONCLUSION

20. For these reasons, the Court **DENIES** the motions to dismiss and motions for judgment on the pleadings.

**SO ORDERED**, this the 19th day of March, 2025.

                 /s/ Adam M. Conrad

                 Adam M. Conrad
                 Special Superior Court Judge
                  for Complex Business Cases