ROGER A. WALTON, Plaintiff-Appellant and Cross-Appellee, v. JAMES R. SPIDLE, Indiv. and d/b/a Isa & Isabelle's, Defendant-Appellee and Cross-Appellant.

Fourth District   No. 4—85—0103

Opinion filed October 3, 1985.

Jonathan H. Barnard, of Schmiedeskamp, Robertson, Neu & Mitchell, of Quincy, for appellant.

Jerry L. Brennan, of Keefe, Gorman & Brennan, of Quincy, for appellee.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On April 14, 1983, plaintiff, Roger A. Walton, brought suit in the circuit court of Adams County against defendant, James R. Spidle. Plaintiff sought damages for injuries he received when hit by a thrown brick while he was standing on the steps of a building in which defendant operated a tavern. The case was tried before a jury on an amended single count complaint charging defendant with negligence in his failure to protect his patrons from injury which was likely to result from a disruption caused by persons who had been in the tavern. On January 21, 1985, the circuit court entered judgment on a verdict in favor of plaintiff and against defendant in the sum of $40,902.

On February 4, 1985, the circuit court allowed defendant's motion for judgment notwithstanding the verdict and denied defendant's alternate motion for a new trial. Plaintiff has appealed, and defendant has cross-appealed. We affirm the judgment on appeal and conditionally affirm as to the cross-appeal.

The posture of the underlying evidence most favorable to the plaintiff is not in substantial dispute. The jury could have found (1) on the evening of May 2, 1982, plaintiff was in defendant's tavern with members of a softball team on which plaintiff played; (2) the group had met there many times before; (3) Richard Kindhart and Marty Jackson, a/k/a Marty Kelly entered the north room of the tavern and became belligerent when members of plaintiff's group refused to wager with them on a game of pool; (4) when defendant's bartender entered the room, plaintiff told him of the problem; and (5) the bartender did nothing (the bartender, however, did testify that he talked to the disputants and told them to stop and they did so).

Viewing the evidence as aforesaid, the jury could also have found

that (1) Kindhart and Jackson left but returned in about 30 minutes whereupon Jackson threatened to fight David James, one of plaintiff's group; (2) as Jackson started to hit James, Jackson was hit by one of plaintiff's group; (3) then, Dickie Fields, another of plaintiff's group, started toward Kindhart who picked up a pool ball and threw it at Fields but missed; and (4) Fields then placed a headlock on Kindhart and walked toward the door to the barroom, and plaintiff removed a beer bottle from Kindhart's hand as he did so.

Plaintiff testified that the bartender never came into the north room during the scuffle but remained behind the bar. However, the bartender testified that he called the police when he heard the commotion. Plaintiff further testified that he was not involved in the scuffle except to walk with Fields as he escorted Kindhart to the door. According to plaintiff, the bartender offered no assistance during this time so plaintiff asked the bartender to contact defendant about the difficulty that was occurring. Within five minutes of Kindhart's leaving the bar, he was arrested. He was then taken to the Quincy police station, booked, and released on bond.

Plaintiff testified that approximately an hour after the disturbance, Kindhart and Jackson reentered the tavern. The bartender testified that the two approached the bar and asked for a drink, whereupon the bartender refused them service. The bartender testified that it appeared the men were leaving the bar.

Fields testified that he saw the two men enter the bar from his seat in the north room. He said he stood up and watched as the men turned around and walked towards the front door. He said that as they walked towards the front door one of the men turned and threw a bottle at Fields. Fields said he ducked and was not hit by the bottle. Fields testified that he then chased after the men as they ran outside. Fields was followed by other patrons including plaintiff.

Plaintiff testified he was not injured in the tavern, and no one touched him or entered into an argument with him while he was in the tavern, but he followed Fields out of the tavern to protect and help him. Plaintiff testified he was 6 feet 2 inches tall and weighed 200 pounds. He said that as he walked out of the bar, he took a pool ball with him for protection.

Fields testified that when they left the tavern, they saw 15 to 20 men with bricks, clubs, chains, and breaker bars. Fields testified that at that time, approximately five men had gone outside with him. Plaintiff testified that when he arrived outside, several of his friends were already involved in fights. Plaintiff said that he raised the pool ball as if he were going to throw it, but did not. He said that Kin-

dhart threw a chain but it did not hit plaintiff. He stated that Kindhart then started running away from the bar, and plaintiff chased after him for about a quarter to a half of a block. Plaintiff testified that he then turned and came back towards the bar where two men threw a couple of bricks that did not hit him. He stated he threw the pool ball at them. Plaintiff stated he then started running towards the bar to help his friends into the bar. At that time, plaintiff was hit in the head with a brick. The brick was thrown by a 14-year-old youth named Williams who apparently was with Kindhart and Jackson during at least one of the first two disputes.

Fields testified that he then ran back inside and told the bartender to call the police. The bartender stated, however, that he had called the police shortly after Kindhart had thrown the bottle. Fields testified that the police did not arrive until 10 to 15 minutes after the bottle was thrown, and the police station was three or four blocks from the bar.

The bartender testified that he did not come out from behind the bar when Kindhart reentered the tavern after his arrest, did not escort him out of the tavern, did not intervene between Kindhart and any other customers, and did not warn the customers or say anything to them about Kindhart's presence in the tavern. He testified that when it appeared that Kindhart was leaving the tavern, the bartender returned to his business and did not see Kindhart pick up anything or throw it. The bartender testified that tavern policy for handling such disturbances was to call the police and not get involved unless there was a life-threatening incident.

■■ The trial court entered judgment notwithstanding the verdict on the basis that defendant owed no duty to protect plaintiff at the time of his injury. The parties agree that the issue of the existence of duty is a question of law for the court to determine. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) Although the case also presents a complex question as to whether a *prima facie* case was presented that any negligence attributable to defendant was a proximate cause of plaintiff's injuries, we agree that under the evidence, defendant owed no duty or protection to plaintiff at the time of his injury. We decide the case on that basis.

The parties are also in agreement that a tavern keeper has a duty to use reasonable care to protect business invitees on its premises from misconduct of third persons. The appellate court so held in *Hayes v. O'Donnell* (1979), 76 Ill. App. 3d 695, 395 N.E.2d 184, citing Restatement (Second) of Torts sec. 314A (1965). The parking lot of a municipal amphitheater was held to be a portion of the premises

where a municipality was held to be under such a duty in *Comastro v. Village of Rosemont* (1984), 122 Ill. App. 3d 405, 461 N.E.2d 616. See also *Getson v. Edifice Lounge, Inc.* (1983), 117 Ill. App. 3d 707, 453 N.E.2d 131.

The basis of the trial court's ruling and the major thrust of defendant's contention in support thereof is that when plaintiff voluntarily left the tavern premises to aid Fields and others, plaintiff was no longer a business invitee, and defendant was no longer under a duty to use reasonable care to protect him. A comment to the previously cited section 314A states:

> "The rules stated in this Section apply only where the relation exists between the parties, and the risk of harm, or of further harm, arises in the course of that relation. A carrier is under no duty to one who has left the vehicle and ceased to be a passenger, nor is an innkeeper under a duty to a guest who is injured or endangered while he is away from the premises. Nor is a possessor of land under any such duty to one who has ceased to be an invitee." Restatement (Second) of Torts Sec. 314A, comment *c,* at 119 (1965).

Plaintiff counters by contending that the focus of duty should be placed upon the situation when acts of negligence attributable to defendant occurred. Any such acts occurred when the bartender failed to take action to prevent Kindhart from generating a disruption at a time when plaintiff was still in the tavern. Plaintiff contends that liability would attach to that breach even though plaintiff was injured after he left the tavern. Plaintiff cites no authority for such a theory, and we know of none. If this theory were carried to its logical conclusion, defendant would have been liable to plaintiff if Kindhart or plaintiff's assailant had followed plaintiff home and attacked him there.

Plaintiff maintains that the jury could properly have found that when Kindhart returned from the police station and he or a companion threw a bottle at Fields, the bartender should have foreseen the magnitude of the fighting that resulted and immediately called the police again. However, foreseeability is not the only element necessary to establish duty. In writing for the court in *Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231, Justice Schaefer stated that in determining whether duty existed, the court should also consider "[t]he likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon the defendant." 36 Ill. 2d 516, 518, 224 N.E.2d 231, 233.

In *Gustafson v. Mathews* (1982), 109 Ill. App. 3d 884, 441 N.E.2d

388, we held that an allegation that employees of a tavern operator, who escorted an obviously inebriated patron to his automobile in the tavern parking lot and permitted him to drive off with several children in the vehicle, failed to set forth a cause of action against the tavern operator or the employees for injuries received by those children arising from a collision that occurred shortly after the automobile left the parking lot, even though the collision was alleged to have been caused by the intoxication of the patron. We cited the foregoing statement from *Lance* and concluded that the burden placed upon the operator of the business to protect patrons from injuries that occur after the patron leaves the premises would be too great.

■ Here, as in *Gustafson,* the claimed negligence occurred, if at all, on the defendant's premises while the injuries occurred after the injured parties had left the premises. The difficulty placed upon the operator of a business in protecting customers after they leave the premises is obviously much greater than when they remain on the premises. This is so even when the negligence attributable to the operator, whether of commission or omission, take place on the premises. If the negligently endangered patrons remain on the premises, ordinarily the operator has a much better chance to protect them or to mitigate their injuries. Here, when Kindhart and his cohorts left the tavern, plaintiff would probably have been safe had he remained in the tavern. The thrust of *Lance* is that reasonable limitations must be placed upon the duty of persons to exercise care to prevent injuries to others. The tenor of section 314A of the Restatement (Second) of Torts seems to limit the duty of operators of businesses to use care to prevent injury to patrons by acts of others to those injuries which are received before the patron leaves the premises. We hold that rule to be applicable here.

We recognize that plaintiff was injured at a time when he had returned to the steps of the building housing the tavern. Plaintiff indicates by his testimony that he did so not to patronize the tavern, but to use it as a sanctuary. Plaintiff does not place substantial emphasis upon his return to the steps of the tavern, and we do not find his return to have revested the defendant with responsibility for injuries that might have causal relationship to the failure of the bartender to take speedier or firmer action to prevent the fights which broke out.

In his alternative counterclaim, defendant asserts that the circuit court should have granted his motion in the alternative for a new trial because the court erred in instructing the jury as to the issues in the case and as to the duties of a tavern keeper. Because the issues presented are moot unless our affirmance of the judgment for defendant

is overturned on review, we choose not to discuss the details of defendant's contentions. However, particularly if our determination that defendant had no duty to plaintiff in regard to the injuries he received is overturned, the instructions were proper. We affirm the trial court's ruling on this alternate motion.

The judgments of the circuit court are affirmed.

Affirmed.

McCULLOUGH and MORTHLAND, JJ., concur.