PETER A. HAUPT, Plaintiff-Appellant, v. CHARLES E. SHARKEY, d/b/a Sharkey's Pub, Defendant-Appellee.

Second District    No. 2—04—1146

Opinion filed June 16, 2005.

Jeffrey L. Hirsch, of Briscoe Law Offices, of Crystal Lake, for appellant.

Timothy K. Whitham, of Brassfield, Krueger & Ramlow, Ltd., of Rockford, for appellee.

JUSTICE KAPALA delivered the opinion of the court:

Plaintiff, Peter A. Haupt, brought a common-law premises liability cause of action in the circuit court of McHenry County to recover damages for personal injuries he sustained when he was attacked outside of Sharkey's Pub, which was owned and operated by defendant, Charles E. Sharkey. The trial court granted summary judgment in favor of defendant. We reverse and remand.

## I. BACKGROUND

The discovery depositions of plaintiff and defendant were taken and appended to defendant's motion for summary judgment. The following accounts are gleaned from those depositions.

According to plaintiff, between 10:30 p.m. and 11 p.m. on January 2, 2002, plaintiff walked into Sharkey's Pub in Wonder Lake, Illinois, with a female named Renee Head. At about the same time three men, including John "Bam" Bell (Bam), also walked into Sharkey's Pub. Plaintiff did not know Bam or the other two men. Plaintiff heard later that, on the night in question, Bam was possibly a member of the Outlaws motorcycle club or was attempting to join that organization. Plaintiff also heard that Bam was known to cause trouble and, as a result, had been banned from several bars in town. Around midnight, plaintiff spoke to Bam inside Sharkey's Pub, but plaintiff did not remember the subject of the conversation. Plaintiff remembered only being "tossed across the room" by Bam. Plaintiff indicated that by "tossed" he meant shoved. At that point, defendant told plaintiff, Bam, and Bam's companions that they had to leave his establishment. Bam left Sharkey's Pub ahead of plaintiff. As soon as plaintiff got out of the front door, Bam turned around and struck plaintiff in the face. Plaintiff said that the tavern door was probably shut behind him and that he was in the parking area right outside the door when Bam struck him. As a result of the blow, plaintiff was knocked out, he lost two teeth, and his jaw was wired shut for nine weeks.

During his deposition, defendant explained that he owned Sharkey's Pub as of January 2, 2002, and lived in an apartment above the establishment. That night, defendant came down to the bar around 11:30 p.m. to get a beer and noticed plaintiff walking into the bar with a group of men and women including an individual defendant knew as "Bam Bam," a member of the Chicago Outlaws motorcycle gang. Plaintiff was drinking beer, laughing, and having a good time with the people who walked in with him. Defendant asked plaintiff what he was "doing with such rank company." Plaintiff told defendant, "they're alright; I know them from down at Dockside [Bar]." Defendant was down at the bar for approximately five minutes and then went back upstairs to his apartment. At about 1:30 a.m. or 1:45

a.m. defendant heard a ruckus downstairs in the bar. When he went downstairs, defendant saw plaintiff and Bam fighting. Elaborating further, defendant said that, "basically, Bam was hitting plaintiff." Defendant said that "they were fist and cuff." Defendant told plaintiff and Bam, "that does it, you're done in here, both of you got to leave." Defendant said Bam and plaintiff left the bar and continued to fight outside on county property. Defendant locked the front door and closed all the curtains. Defendant closed the bar and told everyone to leave through the back door "so they would not get involved in anything" and, in any event, because that is the way that people leave at closing time. Defendant explained further that outside the front door of Sharkey's Pub there is a three-foot sidewalk separating the front door and the angle parking area along Handcock Road. The parking area is owned and maintained by the county. On a prior occasion defendant had told Bam to leave Sharkey's Pub because Bam was wearing Outlaws motorcycle gang colors. Defendant did not permit anyone to wear gang colors or insignias in his tavern, because they cause problems. Once or twice prior to January 2, 2002, Bam tried to intimidate people by harassing them in order to get them to fight. On those occasions, defendant told Bam to "knock it off," and he did so. Defendant denied being afraid of Outlaws; he just did not like them because they caused fights and he did not want them in his bar. Defendant did not know if plaintiff was in danger when he left the bar, but, as far as he was concerned, he did not care about either one of them.

In his motion for summary judgment, defendant took the position that he had no duty to protect plaintiff from the criminal attack by Bam, for two reasons. First, defendant argued that the criminal attack was not reasonably foreseeable. Second, defendant argued that the attack did not occur on property owned by him. In plaintiff's response to the motion for summary judgment, he maintained that the criminal attack was reasonably foreseeable and that defendant's duty to protect him extended beyond the front door of Sharkey's Pub.

The trial court ruled as follows:

"On the basis of the briefs submitted, the arguments of counsel, I find that there is no genuine issue of material fact.

The duty of the Defendant in this case did not extend beyond the premises. He owed no duty to extend his vigilance over these two beyond the door of this establishment.

The establishment did not extend into the parking lot and therefore he owed no duty to the Plaintiff.

Summary judgment is entered in favor of the Defendant against the Plaintiff."

Plaintiff timely appeals.

## II. ANALYSIS

Summary judgment is proper where, when viewed in the light most favorable to the nonmoving party, the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2002); *General Casualty Insurance Co. v. Lacey*, 199 Ill. 2d 281, 284 (2002). While the nonmoving party on a summary judgment motion is not required to prove his case, he must nonetheless present a factual basis that would arguably entitle him to judgment. *Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Co.*, 321 Ill. App. 3d 330, 338 (2001). If, from the pleadings, depositions, affidavits, and admissions on file, the plaintiff fails to establish an element of his cause of action, summary judgment for the defendant is proper. *Lyon Metal Products, L.L.C.*, 321 Ill. App. 3d at 338. The standard of review is *de novo* on an appeal from a grant of summary judgment. *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996).

In order to prevail in an action for negligence, a plaintiff must prove the existence of a duty, a breach of that duty, and an injury proximately caused by the breach. *Elizondo v. Ramirez*, 324 Ill. App. 3d 67, 72 (2001). Without a showing from which the court could infer the existence of a duty, no recovery by a plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper. *Rowe v. State Bank of Lombard*, 125 Ill. 2d 203, 215 (1988). Whether a duty exists is a question of law. *Hills v. Bridgeview Little League Ass'n*, 195 Ill. 2d 210, 228 (2000).

Generally, no duty exists on the part of the owner or occupier of land to protect entrants from the criminal acts of third parties, absent a special relationship between the parties. *Rowe*, 125 Ill. 2d at 215-16; *Ramirez*, 324 Ill. App. 3d at 72. One special relationship recognized by Illinois courts is that of business invitor and invitee. *Rowe*, 125 Ill. 2d at 216. An owner or occupier of land has a duty to protect his or her business invitees against the foreseeable criminal acts of third parties. *Ramirez*, 324 Ill. App. 3d at 72; *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141, 147 (2000); *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439, 442-43 (1996). However, the existence of a special relationship and foreseeability are not the only factors to be considered in determining whether a duty exists. Our supreme court has repeatedly stated that the factors an Illinois court must consider in determining whether a duty exists in a given negligence case are: (1) the reasonable foreseeability of injury; (2) the reasonable likelihood of injury; (3) the magnitude of the burden that guarding against the injury places on the defendant; and (4) the

consequences of placing that burden on the defendant. *Blue v. Environmental Engineering, Inc.*, 215 Ill. 2d 78, 103 (2005); *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 450 (1996); *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 526 (1987). These factors have been applied in negligence cases involving the duty of business owners to their business invitees. See *Osborne*, 312 Ill. App. 3d at 147; *Badillo v. DeVivo*, 161 Ill. App. 3d 596, 599 (1987); *Walton v. Spidle*, 137 Ill. App. 3d 249, 253 (1985).

## A. Plaintiff's Business Invitee Status

In this case, after an apparent finding that plaintiff was attacked in a location beyond the property owned by defendant, the trial court held that defendant did not owe a duty to protect plaintiff from criminal attacks by third parties, because the defendant's duty did not extend beyond the premises of Sharkey's Pub. Stated differently, the trial court held that plaintiff's status as defendant's business invitee ended the moment he stepped off the premises of Sharkey's Pub and, at that point, the special relationship between the parties ended such that defendant no longer owed plaintiff a duty of protection.

Plaintiff argues that the trial court erred in holding that defendant's duty to protect him from foreseeable criminal attacks by third persons ended at the property line of Sharkey's Pub. Defendant maintains that the trial court was correct in finding that he was under no duty to protect plaintiff from a criminal attack by a third party that occurred outside of the property that he owned or controlled. Thus, we must decide whether the trial court properly held that plaintiff could not prove that defendant had a duty to protect him, simply because plaintiff was attacked while on property not owned or controlled by defendant. As such, we are deciding whether plaintiff, a departing patron of defendant's tavern, remained the defendant's business invitee even while off property owned or controlled by defendant. For the reasons that follow, we conclude that plaintiff remained defendant's business invitee at the time he was attacked by Bam, even though plaintiff had at that point stepped beyond the legal property line of Sharkey's Pub.

Defendant cites *Lewis v. Razzberries Inc.*, 222 Ill. App. 3d 843, 850-52 (1991), *Badillo*, 161 Ill. App. 3d at 598, and *St. Phillips v. O'Donnell*, 137 Ill. App. 3d 639, 643 (1985), in support of his position that a tavern owner is not required to protect his patrons from foreseeable dangers caused by third persons off the tavern's premises. It has been held, however, that these three cases do not create an insurmountable barrier to the existence of a duty beyond the doors of the premises. *Osborne*, 312 Ill. App. 3d at 147. We agree.

In *Osborne*, after fighting with two intoxicated men, the defendant's bouncers forced the men outside the tavern and locked the doors. *Osborne*, 312 Ill. App. 3d at 143-44. As the plaintiff prepared to leave the tavern, she noticed the two men standing outside the building, pounding on the outside doors and yelling profanities at the bouncers, who did not appear to acknowledge them. *Osborne*, 312 Ill. App. 3d at 144. The bouncers allowed the plaintiff to leave the tavern through the locked doors and, after she took a few steps outside the tavern, one of the men kicked the plaintiff in the head with a karate style "spinning heel kick." *Osborne*, 312 Ill. App. 3d at 144. In reversing the trial court's directed verdict for the defendant, the appellate court declined to hold that the defendant's duty to its patrons stopped at the doors of the premises, especially where the defendant used the sidewalk to control entry by customers. *Osborne*, 312 Ill. App. 3d at 148. The court in *Osborne* relied on *Shortall*, among other cases, in concluding that the fact that the assault took place on a public sidewalk just outside the tavern did not dispose of the duty issue. *Osborne*, 312 Ill. App. 3d at 148.

In *Shortall*, the court determined that the defendant tavern owner had a duty to protect the plaintiff from injuries sustained in a fight that took place immediately outside the tavern, on the public sidewalk and street, after the plaintiff had left the tavern. *Shortall*, 283 Ill. App. 3d at 443. In so ruling, this court specifically noted "that tavern owners may not avoid application of the duty to act to protect invitees from criminal attack by third parties simply because the disturbance giving rise to the duty occurs just out the front door, especially where the owner contributes to the altercation by sending patrons out into it." *Shortall*, 283 Ill. App. 3d at 444.

■ Although the general rule, as stated in *Lewis*, *Badillo*, and *St. Phillips*, is that a tavern owner has no duty to protect persons from foreseeable dangers caused by third persons off the premises controlled or owned by the tavern owner, based on the holdings in *Osborne* and *Shortall*, we conclude that there is no bright-line rule that a tavern owner's duty to protect its patrons from criminal acts of third parties absolutely ends at the precise property line of the tavern.

In fact, the courts in both *Badillo* and *St. Phillips* recognized authority establishing that an owner or operator of premises has a duty to provide a reasonably safe means of ingress and egress both on his premises and, within limitations dictated by the facts of the case, beyond the precise boundaries of such premises. *Badillo*, 161 Ill. App. 3d at 598, citing *McDonald v. Frontier Lanes, Inc*, 1 Ill. App. 3d 345, 351 (1971); *St. Phillips*, 137 Ill. App. 3d at 643, citing *McDonald*, 1 Ill. App. 3d at 351. After recognizing this authority, however, the *Badillo*

and *St. Phillips* courts found that such a duty did not extend to the protection of the plaintiffs in those cases. See *Badillo*, 161 Ill. App. 3d at 597 (plaintiff was assaulted and battered near her vehicle, which was parked a half block away from the tavern); *St. Phillips*, 137 Ill. App. 3d at 641 (plaintiff was attacked by a tavern patron who had been ejected by defendant four minutes before the attack and the attack occurred at plaintiff's vehicle, which was parked in the parking lot of the shopping mall that contained the tavern).

■ In this case, it is undisputed that the criminal attack upon plaintiff took place as he left Sharkey's Pub. More precisely, Bam struck plaintiff in the face immediately after plaintiff stepped off of defendant's property and onto the parking area owned by the county. However, based on the authority cited above, we believe that plaintiff retained his status as a business invitee at the point he was struck in the face by Bam, because the event occurred during plaintiff's egression from Sharkey's Pub. Because we conclude that a tavern owner's duty to protect patrons from criminal acts of third parties does not necessarily end at the precise legal property line of the tavern, and extends to areas beyond so as to provide a reasonably safe means of ingress and egress to patrons, the location of the attack in this case does not dispose of the duty issue. Consequently, we reject the trial court's rationale for granting summary judgment for defendant. However, our inquiry into the propriety of the trial court's judgment does not end here.

## B. Foreseeability of the Attack on Plaintiff

■ Defendant argues further that, in any event, Bam's attack on plaintiff was not reasonably foreseeable and that we should, on that basis, affirm the order granting summary judgment in his favor. The forseeability of the attack on plaintiff was not ruled upon by the trial court. Nevertheless, because we may affirm the trial court's order granting summary judgment on any basis supported by the record, regardless of the reasoning employed by the trial court (*General Star Indemnity Co. v. Lake Bluff School District No. 65*, 354 Ill. App. 3d 118, 124 (2004)), we go on to determine if the record establishes a factual basis that the attack on plaintiff was arguably reasonably foreseeable, giving rise to defendant's legal duty to protect plaintiff.

A criminal attack by a third person is reasonably foreseeable when the circumstances are such as to put a reasonably prudent person on notice of the probability of an attack or when a serious physical altercation has already begun. *Shortall*, 283 Ill. App. 3d at 443. The deposition testimony contains evidence that circumstances existed that, arguably, would put a reasonably prudent person on notice of the

probability that Bam would criminally attack plaintiff if they were both sent out the front door of Sharkey's Pub at the same time immediately following the physical altercation that occurred inside Sharkey's Pub. Just before Bam struck plaintiff in the face, defendant ejected both men from the bar because defendant observed Bam "basically hitting plaintiff" and the two men were "fist and cuff." Viewed in a light most favorable to plaintiff, this testimony, and plaintiff's account of the altercation within the bar, leaves open the possibility that Bam was the aggressor and acted without justification when the physical altercation began with plaintiff inside the bar. This fact alone would arguably put a reasonably prudent person on notice that it was probable that Bam would criminally attack plaintiff outside the bar if both men were ejected from the bar at the same time. Additionally, defendant arguably knew that Bam had a propensity toward violence. Defendant referred to Bam as "rank company" and testified that once or twice prior to January 2, 2002, Bam had harassed people in Sharkey's Pub in order to get them to fight. Although defendant testified that Bam ceased harassing patrons when he was told to "knock it off," defendant did not tell Bam to knock it off in this instance; instead, he exported the altercation outside. Defendant also knew that Bam was a member of the Outlaws motorcycle club, members of which, in defendant's opinion, have a propensity to cause fights. Moreover, after ejecting plaintiff and Bam from Sharkey's Pub, defendant closed the bar and ushered the remaining patrons out the back door "so they would not get involved in anything." This testimony shows that defendant at least suspected that there was going to be something occurring in front of the bar that the remaining patrons would do well to avoid.

We conclude by noting that defendant makes no argument in support of affirming summary judgment in his favor based on his having no legal duty to protect plaintiff due to an analysis of the three other factors used to determine if a duty exists. See *Blue*, 215 Ill. 2d at 103. Specifically, defendant does not argue that he had no duty to protect plaintiff because there was no reasonable likelihood that plaintiff would be injured as a result of the attack by Bam, because the magnitude of the burden of guarding against the injury plaintiff received was too great, or because under these circumstances the consequences of placing that burden on defendant weigh against imposing a duty. Consequently, these arguments are waived (188 Ill. 2d R. 341(e)(7)), and we will not analyze those factors or express any opinion as to the bearing they might have on the existence of defendant's duty to protect plaintiff in this case.

## III. CONCLUSION

For the foregoing reasons, the trial court's order granting summary judgment in favor of defendant is reversed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

O'MALLEY, P.J., and BOWMAN, J., concur.