# Illinois Official Reports

## Appellate Court

---

*Hougan v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 2013 IL App (2d) 130270

---

| | |
|---|---|
| Appellate Court Caption | SUSAN HOUGAN and THOMAS HOUGAN, Plaintiff-Appellants, v. ULTA SALON, COSMETICS AND FRAGRANCE, INC., Defendant-Appellee (Fridh Corporation and Joseph Biddle, Defendants). |
| District & No. | Second District<br>Docket No. 2-13-0270 |
| Filed | November 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action for the injuries plaintiff suffered when she was standing on the sidewalk outside defendant's salon while waiting for her husband after making a purchase inside and she was struck by a motorist who was parking in a space facing the storefront when his car accidentally accelerated and jumped the curb, the trial court properly granted summary judgment for the store, since the sidewalk and parking area were controlled by the store's landlord, the landlord had a duty to exercise reasonable care to keep those premises in a reasonably safe condition, and the store had no duty to warn plaintiff of the possibility of being struck by an out-of-control motorist entering one of the parking spaces facing the store. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 08-L-316; the Hon. J. Edward Prochaska, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Frank A. Perrecone, of Ferolie & Perrecone, Ltd., of Rockford, for appellants.<br><br>Edward M. Maher, of Guyer & Enichen, P.C., of Rockford, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Justices Hudson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case arises from injuries sustained by Susan Hougan when she was standing on the sidewalk outside a storefront owned by Fridh Corporation (Fridh) and leased to Ulta Salon, Cosmetics & Fragrance, Inc. (Ulta[1]). Joseph Biddle drove into a parking space facing the store but then accidentally pressed the accelerator rather than the brake, causing the car to jump the curb and injure two pedestrians, including Susan. Plaintiffs, Susan and her husband, Thomas Hougan, brought suit against defendants, Ulta, Fridh, and Joseph. The trial court granted Ulta's motion for summary judgment, reasoning that any duty to protect Susan from the risk of being struck by an out-of-control vehicle when she was standing on a common area owned, maintained, and exclusively controlled by Fridh did not extend to Ulta. The trial court further entered a finding under Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), allowing plaintiffs to appeal its ruling. We affirm.

¶ 2                                          I. BACKGROUND

¶ 3    Plaintiffs stopped at Ulta on June 29, 2008, so that Susan could make a purchase. It was raining. Thomas parked in a parking spot facing the store, to the side of Ulta's front door. He remained in the car while Susan went inside. She exited after about 10 minutes and stood under an awning, where sisters Melissa and Laurian Ogle were also standing. Susan tried to get Thomas's attention because she was not sure if the car's doors were unlocked, and she did not

_____

[1]We refer to both the company and the store location as "Ulta."

- 2 -

want to get wet. She heard an engine rev and saw a car coming toward her. The front passenger side of the car struck her. Susan estimated that, from the time she exited the store to the time she was hit, at most two or three minutes had passed.

¶ 4    Melissa and Laurian had been out with Melissa's then-boyfriend, Joseph. They were in a car belonging to Melissa and Laurian's mother. They stopped at Ulta, and Melissa and Laurian went inside while Joseph waited in the car. When the women exited the store, it was raining heavily. They stood on the sidewalk outside the store, under an awning, and waved to Joseph. Joseph understood them to be asking him to pick them up. He moved to the driver's seat and pulled into a parking spot in front of the store. When he was approaching the front of the spot, he heard Melissa saying "stop." Joseph panicked and put his right foot down quickly. Either he pressed the accelerator or his foot slipped off the brake and onto the accelerator because his shoes were wet. The car went over the curb, onto the sidewalk, and hit the building. The car struck Melissa's legs, and when Joseph exited he saw that Susan had also been injured. Joseph was ticketed for negligent driving, to which he pleaded guilty.

¶ 5    Ulta's entrance and exit doors were side by side. The only way for customers to walk to and from the store and the parking lot was to cross the sidewalk in front of the store. The width of the sidewalk was seven feet, eight inches. The curb in front of the store was about five inches high.

¶ 6    Alex Lelli testified in his deposition that he was in charge of real estate, construction, repairs, and maintenance at Ulta. All of Ulta's stores were leased, and almost all of them were in shopping centers. Ulta had employees who would negotiate with landlords regarding leases. Making sure there was safe passage between the store and the parking lot could be negotiated, though it was "unlikely" that the installation of bollards would be discussed.

¶ 7    Ulta signed the lease for the store in June 1995 with the then-owner of the shopping center. Ulta was the original tenant of the space. About six months later, Fridh purchased the shopping center and became Ulta's landlord. The lease remained in effect. Fridh did not alter the parking lot in any way.

¶ 8    The leasehold described in the lease is represented in a diagram as the store itself; the sidewalk and parking lot are not included. The lease states that the landlord constructed the sidewalks and parking lots and striped the parking lots. The lease refers to these areas, among others, as " 'Common Facilities' " and states that they are to be for the use of all shopping center occupants. The lease states that the landlord will:

> "Make all necessary repair and maintenance to the exterior and structural portions of the improvements on the Leased Premises, including but not limited to roofs, exterior walls, slab floor, canopies, but excluding Tenant's signs and doors."

The lease further states in relevant part:

> "Common Facilities. Landlord shall maintain the Common Facilities in good order, appearance and repair (including but not limited to all necessary patching and restriping of the parking areas), provide adequate lighting thereof, and promptly remove all snow, dirt and debris therefrom, it being understood and agreed that these items shall be common area charges reimbursable as provided in Section 12.2 hereof.

* * *

*** Tenant's Alterations. Tenant may at its expense from time to time make any non-structural alterations, changes or improvements in, on and to the interior of the Leased Premises which it may deem necessary and desirable. Tenant may make structural changes to the Leased Premises *with the approval of the Landlord which approval shall not be unreasonably withheld or delayed*, provided that the installation, removal, placement and relocation of trade fixtures, the change or addition of interior doors, and the changing or relocation of interior plumbing, electrical, and other lines (including venting) shall not be deemed structural changes. Tenant shall not be required to, but may, remove any such alterations, changes or improvements at any time before the termination of this Lease by lapse of time or otherwise, provided Tenant shall repair any damage caused by such removal. *Notwithstanding anything in this Lease to the contrary, no alteration, change or improvement shall be made to the exterior of the Leased Premises without [the]Landlord's written consent, which consent may be granted or withheld in the Landlord's sole discretion.*" (Emphases added.)

¶ 9    Carolyn Enkstrom, Fridh's vice president of operations, testified in a deposition that the lease represented all of Ulta's rights and obligations regarding the property.

¶ 10    Jeff Holt, Fridh's commercial property manager, testified to the following in his deposition. The parking lot and sidewalk were common areas under the lease, and Fridh was responsible for their maintenance and repairs. Fridh was also responsible for keeping the common areas in a reasonably safe condition, excluding snow removal for the sidewalks. Fridh's responsibilities included maintaining a safe entrance to and exit from the store. Under the lease, Ulta was required to obtain permission from Fridh for structural changes to the interior of the store, and such approval could not be unreasonably withheld. Ulta could also request exterior changes, but that approval was within Fridh's sole discretion.

¶ 11    Plaintiffs filed a six-count complaint against defendants on September 5, 2008. Counts I and IV were directed at Ulta. Count I, brought in Susan's name, alleged as follows in relevant part. Ulta had a duty to use reasonable care to provide its business invitees with a reasonably safe means of ingress and egress to its store, and a duty to use reasonable care in keeping its premises in a reasonably safe condition for such invitees. Ulta further had a duty to use reasonable care for the safety of business invitees using the ingress/egress sidewalk, to protect them from the foreseeable risk of injury from out-of-control motor vehicles in the parking lot. Plaintiffs alleged that Ulta breached this duty because, although Ulta knew or should have known that its customers on the ingress/egress sidewalk were at foreseeable risk of injury from out-of-control motor vehicles due to negligent operation in the parking lot, Ulta: (1) operated its store without vertical concrete pillars or poles, or other sufficient barriers, between the end of the parking lot and the beginning of the sidewalk in front of Ulta's doors; (2) operated its store knowing that drivers were permitted to park in stalls immediately adjacent to the sidewalk, facing the store; (3) failed to provide a reasonably safe way for customers to enter and exit the store; (4) operated its store knowing that a sidewalk for use by customers was immediately adjacent to parking stalls facing the sidewalk and store; and (5) failed to make

necessary arrangements with the landlord to protect its customers using the sidewalk. On November 2, 2012, plaintiffs amended their complaint to allege that Ulta additionally: (6) knew or had reason to know that perpendicular storefront parking, without protective barriers, placed customers at risk of injury due to potential loss of vehicle control by parking drivers; (7) failed to protect ingressing and egressing business invitees from risk of injury from such drivers; (8) failed to provide a safe ingress to and egress from the store by use of the sidewalk; (9) failed to maintain its premises in a reasonably safe condition; and (10) failed to warn business invitees of the risk of injury.

¶ 12    Count IV, brought in Thomas's name, restated the allegations of count I and alleged a claim of loss of consortium.

¶ 13    On April 26, 2012, Ulta moved for summary judgment. According to Ulta: Fridh owned the shopping center; the sidewalk where Susan was standing when she was injured was a common area of the shopping center, as was the parking lot in which Joseph was driving; and Ulta's lease with Fridh did not convey any authority to Ulta to make changes to the common areas of the shopping center. Ulta argued that plaintiffs failed to allege that Ulta had any recognized duty to Susan while she was in one of the shopping center's common areas. Ulta argued that, even if it owed a duty, Ulta was not a proximate cause of any injury sustained by Susan.

¶ 14    Plaintiffs retained two expert witnesses who submitted affidavits. Warren VanderHelm, an expert in parking lot safety and design, opined as follows. Retail store and shopping center operators have known for years of the dangers of head-in storefront parking, as pedal error, mechanical error, and other driver error cause building strikes and injuries or death on a regular basis. Ulta and Fridh should also have known of inexpensive remedial measures that would have prevented Susan from being injured. Many retailers and wholesalers around the country, such as Walmart, Target, and Home Depot, have employed these devices at their entries, as well as eliminated parking aimed at the front doors.

¶ 15    Robert Reiter, an expert in using bollards and barriers to prevent vehicle strikes to buildings and pedestrians, opined that the sidewalk in front of Ulta was dangerous to business invitees because: 40 to 50 pedal error incidents occur daily in the United States, making it highly predictable that a driver attempting to park in one of the parking stalls in front of Ulta's doors would lose control of the car and jump the curb; there were no protective barriers on the sidewalk; and if bollards had been present, Susan would not have been injured.

¶ 16    The trial court granted summary judgment for Ulta on February 20, 2013, and entered a Rule 304(a) finding. The trial court found that Ulta's duty to Susan as a business invitee ended once she left the physical boundaries of the store and entered into the common area defined by the lease and controlled by Fridh. "Specifically, because Susan had safely exited the premises, and consciously chose to stand in a 'common area' not controlled or operated by [Ulta, the trial court found] that her egress was complete and the [*sic*] Ulta owed her no duty at the time she was injured."

¶ 17    Plaintiffs timely appealed from the trial court's ruling. Fridh and Joseph are not parties to this appeal.

## II. ANALYSIS

On appeal, plaintiffs argue that the trial court erred in granting summary judgment for Ulta. Summary judgment is appropriate only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lazenby v. Mark's Construction, Inc.*, 236 Ill. 2d 83, 93 (2010). We review *de novo* a grant of summary judgment. *Metropolitan Life Insurance Co. v. Hamer*, 2013 IL 114234, ¶ 17.

To succeed in an action for negligence, the plaintiff must establish that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty; and (3) the breach proximately caused injury to the plaintiff. *Choate v. Indiana Harbor Belt R.R. Co.*, 2012 IL 112948, ¶ 22. Whether a duty exists under a particular set of circumstances is a question of law for the court to decide. *Id.* If a duty does not exist, the plaintiff cannot recover as a matter of law. *Id.* While the existence of a duty is a question of law, the issues of whether the defendant breached that duty and whether the breach proximately caused the plaintiff's injury are factual matters for the trier of fact to decide, provided there is a genuine issue of material fact regarding those issues. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006).

In determining whether a duty exists, courts look to four factors: (1) the reasonable foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against injury; and (4) the consequences of placing that burden on the defendant. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 18. These four factors encompass the "relationship" between the plaintiff and the defendant, and the court must determine whether the plaintiff and the defendant stood in such a relationship that the law imposed upon the defendant an obligation of reasonable conduct for the plaintiff's benefit. *Id.* "The determination of such a 'relationship,' as sufficient to establish a duty of care, requires considerations of policy inherent in the consideration of these four factors and the weight accorded each of these factors in any given analysis depends on the circumstances of the case at hand." *Id.*

Certain special relationships, including the relationship between a business invitor and invitee, can give rise to an affirmative duty to protect another against an unreasonable risk of physical harm. *Marshall*, 222 Ill. 2d at 438-39 (citing Restatement (Second) of Torts § 314A (1965)). The duty to protect against the unreasonable risk of physical harm includes harm caused by a third party's innocent, negligent, intentional, or criminal misconduct. *Id.* at 439-40 (citing Restatement (Second) of Torts §§ 314A cmt. d, 344 (1965)). A business owner also generally has a duty to provide a reasonably safe means of ingress to and egress from the business. *Reed v. Galaxy Holdings, Inc.*, 394 Ill. App. 3d 39, 42 (2009).

Plaintiffs argue that Ulta owed Susan a duty of care because, before and at the time of the accident, she was a business invitee. Plaintiffs rely extensively on *Marshall*. There, a driver in a Burger King parking lot backed into a lamppost. When she then drove forward, her accelerator stuck, resulting in the car hitting the sidewalk and becoming airborne. *Marshall*, 222 Ill. 2d at 425. The car crashed through the brick and glass exterior of the restaurant, killing a patron inside. *Id.* The plaintiff, the decedent's father, brought suit, alleging, among other

things, that Burger King and its franchisee did not exercise reasonable care in designing, constructing, and maintaining the restaurant, and that their failure to do so proximately caused the decedent's death. *Id.* at 424. The defendants moved to dismiss under section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)), arguing that the plaintiff had failed to state a cause of action, because they had no duty to protect the decedent from such an accident. *Marshall*, 222 Ill. 2d at 427. The trial court granted the motion. *Id.* The appellate court reversed and remanded, and the supreme court affirmed. *Id.* at 424.

¶ 24       The supreme court initially found that the defendants had forfeited their argument regarding lack of proximate cause. *Id.* at 430. It further noted that, because the parties did not present arguments regarding the theories of negligent design and negligent construction alleged in the complaint, the supreme court was confining its analysis to whether the defendants owed a duty to the decedent in their alleged capacities as "owners and operators of the restaurant." *Id.* at 432-33. The supreme court stated that, based on the plaintiff's allegations, the duty of care that a business invitor owes to invitees to protect them against the unreasonable risk of physical harm clearly applied to the case. *Id.* at 440. Specifically, the complaint alleged that, while the decedent was a customer at a restaurant owned and operated by the defendants, he was injured by the negligent act of a third person. *Id.* The supreme court considered the four factors involved in the traditional duty analysis only to address the defendants' argument that it should create an exemption from the duty of care a business invitor owes to an invitee. The supreme court concluded that no such exemption should exist, stating that: "it is reasonably foreseeable, given the pervasiveness of automobiles, roadways, and parking lots, that business invitees will, from time to time, be placed at risk by automobile-related accidents"; the likelihood that invitees will be injured in such instances is high; and any extensive costs to businesses and the public that would arise by not creating an exemption from the applicable duty of care were speculative at best. *Id.* at 442-43.

¶ 25       The supreme court continued:

> "Recognizing that the duty of reasonable care that businesses owe to their invitees applies to cases where invitees are injured by out-of-control automobiles is not the same as concluding the duty has been breached because a business failed to take a certain level of precaution. Nor is it the same as concluding that the breach was the proximate cause of an invitee's injuries. In short, merely concluding that the duty applies does not constitute an automatic, broad-based declaration of negligence liability." *Id.* at 443.

The supreme court cautioned against conflating the concepts of duty of care and breach of that duty. *Id.* It stated:

> "Thus, the issue in this case is not whether defendants had a duty to install protective poles, or a duty to prevent a car from entering the restaurant, or some such other fact-specific formulation. Because of the special relationship between defendants and the decedent, they owed the decedent a duty of reasonable care. The issue is whether, in light of the particular circumstances of this case, defendants breached that duty. That question cannot be answered at this stage of proceedings." *Id.* at 443-44.

The supreme court further stated that, even if, *arguendo*, a business invitor's lack of knowledge of prior, similar incidents should limit his duty of care, the plaintiff alleged that, based on the place and character of the defendants' business, they had reason to know that the negligent conduct of third persons was likely to endanger its customers. *Id.* at 445-46.

¶ 26    Plaintiffs argue that, in both *Marshall* and the instant case, the foreseeable risk of invitee injury due to vehicular loss of control in the parking lot is the same. Ulta counters that *Marshall* is inapplicable here because plaintiffs rely on a cause of action for the negligent design and construction of the building, which was not at issue in *Marshall*. Plaintiffs respond that their action is based upon the duty Ulta owes as an operator of a business. We agree with plaintiffs that the complaint's allegations can be construed as being directed at Ulta's duty as a business invitor, rather than on theories of negligent construction and design.

¶ 27    Ulta additionally argues that *Marshall* is distinguishable because the decision was on a motion to dismiss, whereas this case involves a motion for summary judgment. We agree that this is a notable difference between the cases. See also *id.* at 450 (distinguishing out-of-state cases in part because they were at the summary judgment stage). The more important distinction raised by Ulta is that the *Marshall* plaintiff alleged that the defendants owned, operated, controlled, and maintained the restaurant, whereas here Susan's injury occurred on a sidewalk not owned, operated, controlled, or maintained by Ulta under its lease with Fridh. That is, had Susan been injured by an out-of-control car while she was still inside the store, the business invitor's duty discussed in *Marshall* would clearly apply. In contrast, *Marshall* does not answer the question of whether Ulta owed Susan such a duty when she was standing on property owned and controlled by Fridh.

¶ 28    To this end, plaintiffs cite *Haupt v. Sharkey*, 358 Ill. App. 3d 212 (2005), for the proposition that Ulta's duty to protect its invitees from the foreseeable risk of harm caused by negligent acts of third parties did not stop at Ulta's doors. In *Haupt*, the defendant tavern owner told both the plaintiff and another patron to leave after the patron shoved or hit the plaintiff. *Id.* at 214-15. The defendant had, on prior occasions, reprimanded the patron for harassing other people and had once told him to leave for wearing motorcycle gang colors. *Id.* at 215. As soon as the plaintiff and the patron left, the defendant locked the front door, closed the curtains, and told other customers to leave through the back door. When the plaintiff stepped outside, the patron struck and injured him. *Id.* at 214. The sidewalk and parking area outside of the tavern were owned by the county. *Id.* at 215.

¶ 29    On an appeal from a grant of summary judgment for the defendant, this court recognized that a business invitor has a duty to protect business invitees against foreseeable criminal acts by third parties. *Id.* at 216. We cited *Osborne v. Stages Music Hall, Inc.*, 312 Ill. App. 3d 141 (2000), where the appellate court held that the defendant's duty to its patrons did not automatically stop at its premises' doors, especially where the defendant used the sidewalk to control entry by its customers. *Haupt*, 358 Ill. App. 3d at 218. We further cited *Shortall v. Hawkeye's Bar & Grill*, 283 Ill. App. 3d 439 (1996), where we had held that a tavern owner could not avoid the duty to protect invitees from criminal attack by third parties simply because the attack occurred just outside the front door, especially where the owner contributed to the attack by sending patrons out. *Haupt*, 358 Ill. App. 3d at 218. We stated in *Haupt* that the

plaintiff retained his status as a business invitee because he was still egressing from the establishment, and, under the aforementioned cases, the exact location of the attack in the case did not resolve the duty issue. *Id.* at 219. Applying the four factors involved in the traditional duty analysis, we stated that the latter three had been forfeited by the defendant. Regarding the first factor, we determined that the attack was reasonably foreseeable because the defendant ejected both men after the patron had been physically aggressive toward the plaintiff and the defendant arguably knew of the patron's propensity toward violence. *Id.* at 219-20.

¶ 30        Plaintiffs argue that, like the plaintiff in *Haupt*, who was a few feet off of the tavern's property, Susan maintained her status as an invitee while she momentarily stood under the awning on the ingress-egress sidewalk. Plaintiffs also maintain that, while *Haupt* involved a duty to protect patrons from foreseeable criminal acts of third parties, the *Marshall* court held that a business invitor's liability for the acts of a third person also extends to negligent acts, where the invitor failed to use reasonable care. See *Marshall*, 222 Ill. 2d at 439-40.

¶ 31        Plaintiffs' argument is not persuasive, as *Marshall* did not involve an injury that occurred outside of the invitor's property. Moreover, we did not hold in *Haupt* that a business invitor is always liable for acts occurring just outside its property, but rather that the invitor's duty does not automatically stop at its threshold. In extending the duty beyond the threshold, *Haupt* and the cases cited within all involved the invitor contributing to the injury by choosing to send patrons out when it was likely that they would be injured based on prior fighting, and/or situations where the invitor was using the sidewalk to control entry. Here, in contrast, nothing occurred immediately prior to the accident such that Ulta should not have let Susan exit at the time she did, and Ulta did not take any affirmative actions to control the sidewalk.

¶ 32        Plaintiffs cite *McDonald v. Frontier Lanes, Inc.*, 1 Ill. App. 3d 345 (1971), and *Cooley v. Makse*, 46 Ill. App. 2d 25 (1964), in arguing that the sidewalk where Susan's injury occurred was an ingress-egress sidewalk for exclusive use by Ulta's invitees and that Susan was still Ulta's invitee at the time she was struck, because she had not completed her egression from the store to her car. In *McDonald*, the plaintiff was injured when she stepped into a hole in a parkway owned by the City of Elgin. *McDonald*, 1 Ill. App. 3d at 348. This court stated that the evidence showed that a bowling alley had assumed use of the sidewalk and the parkway for the ingress and egress of its patrons.

¶ 33        In *Cooley*, the plaintiff fell on a deteriorated brick walkway in front of a tavern. *Cooley*, 46 Ill. App. 2d at 26-27. The walkway was on a city-owned easement, which the city had never used. *Id.* The only way to access the tavern was from the walkway (*id.* at 30), and the walkway had no other useful purpose (*id.* at 28). This court stated that the "defendants, whether lawfully or not, had assumed the right to use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building." *Id.* at 30. We stated, "Having prescribed the route to their invitees for ingress and egress to and from their building, it was their duty to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition." *Id.* at 32.

¶ 34        Plaintiffs argue that, as in *Cooley*, the only purpose of the sidewalk here was for Ulta's invitees to walk between the store and the parking lot. Plaintiffs argue that, consequently, Susan did not lose her status as a business invitee by momentarily standing near the exit door,

- 9 -

and Ulta owed Susan a duty to provide safe egress while she was using the sidewalk to get to the parking lot.

¶ 35    As with the other cases plaintiffs rely on, *McDonald* and *Cooley* are distinguishable in significant respects. Most importantly, contrary to plaintiffs' assertions, the exhibits on file show that there is no genuine issue of material fact that the sidewalk here was not for the exclusive use of Ulta's patrons. Aside from the lease designating the sidewalk as a common area, patrons for the next-door Carpet One store, or even other stores in the shopping center, could easily park in front of Ulta and make use of the same sidewalk to reach their destinations. Indeed, *Cooley* itself labels as inapposite "[c]ases where the landlord reserved a common areaway for the use of multiple tenants." *Id.* at 28.

¶ 36    Ulta argues that this case is more analogous to *St. Phillips v. O'Donnell*, 137 Ill. App. 3d 639 (1985). We agree. There, the plaintiff and a man named Trent O'Donnell were patrons at a tavern in a shopping mall. *Id.* at 640. O'Donnell became involved in two fights with patrons other than the plaintiff and was escorted out. A few minutes later, the plaintiff went to the parking lot and moved his car to a closer spot. When he exited the vehicle, O'Donnell attacked him. *Id.* at 640-41. The tavern's lease provided that the parking lot, walkways, and roadways were common areas, subject to the landlord's rules and regulations, and that the operation and maintenance of the common areas were at the landlord's sole discretion. *Id.* at 641.

¶ 37    This court found that the tavern owed no legal duty toward the plaintiff. *Id.* at 644. We stated that the tavern leased premises from its landlord pursuant to a written lease, but the injury did not occur on the leased premises. *Id.* at 643. We stated that, while the lease gave the tavern and its customers a right to use the parking lot, the landlord expressly retained control of the common areas, including the lot. *Id.* at 644. We continued:

> "Under these facts, defendant could not undertake measures to control the operation of the common parking areas in order to protect plaintiff and control third persons' actions once they were off the premises defendant leased. The landlord here has retained the right to control and to operate the common areas in the shopping center and is best able to prevent harm to others on the common areas. Additionally, this is not a case where defendant in fact exercised control over the common area or negligently performed a voluntary undertaking.
>
> *** Normally, where only a portion of the premises is rented and the landlord retains control of other parts for the common use of tenants, the landlord has the duty to exercise reasonable care to keep those premises in a reasonably safe condition and is liable for a foreseeable injury from a failure to perform such duty." *Id.*

¶ 38    Plaintiffs argue that *St. Phillips* is distinguishable because the tavern did not expose its invitees to an ongoing risk of foreseeable third-party harm once it opened for business. This argument is without merit, as injuries from fights between bar patrons are at least as foreseeable as injuries from out-of-control cars. Plaintiffs also argue that the tavern owner could not take measures to control the operations of the parking lot where the plaintiff was injured, whereas in this case Ulta's lease negotiators could have negotiated safe passage to and from the parking lot. However, that Ulta could have theoretically asked for the installation of bollards or a particular parking lot design does not mean that Fridh would have agreed to such

a request, and any lessee arguably could attempt such negotiations even after a shopping center has been built.

¶ 39 Plaintiffs cite *Cochran v. Great Atlantic & Pacific Tea Co.*, 203 Ill. App. 3d 935 (1990), for the proposition that Ulta's lease with Fridh did not exempt it from the duty of care it owed as a business invitor to Susan. In *Cochran*, the plaintiff fell on a ramp located at the defendant's door; the ramp was part of a parking lot used in common by all patrons of a shopping mall. *Id.* at 936-37. The jury found in favor of the plaintiff, and the defendant argued that the trial court erred in excluding evidence that, under its lease, the landlord had the duty to maintain and repair the parking lot. *Id.* at 937. The appellate court held that the trial court did not abuse its discretion in excluding the evidence, because the issue at trial was the defendant's common-law duty, and whether the landlord also had a duty was not relevant. *Id.* at 937-38.

¶ 40 We agree with Ulta that *Cochran* is inapposite because it involved coextensive duties of the landlord and the lessee to maintain and repair the parking lot where the plaintiff fell. Here, in contrast, the lease gave Fridh sole discretion over the areas outside of Ulta's leased premises. That is, Ulta is not relying on the lease to attempt to create an exception to a duty to Susan while she stood on the sidewalk, but rather the terms of the lease are relevant to determining whether there was such a duty in the first place. See also *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 47 (2004) ("Courts reason that a person's duty can extend no further than the person's right, power, and authority to implement it.").

¶ 41 Plaintiffs argue that, at a minimum, Ulta had a duty to warn its business invitees of the risk of injury from drivers losing control of their vehicles while parking in the store-facing stalls. The duty to warn was not at issue in *St. Phillips*. Even if, *arguendo*, Ulta had such a duty to warn its customers in general,[2] that duty did not apply to Susan, based on her deposition testimony. Susan testified that she had commented to her husband and Ulta clerks that it was dangerous for cars to be able to drive so close to the store's doors, because they could come up onto the sidewalk. As the Seventh Circuit Court of Appeals has stated, there can "be no duty to warn *** against possible consequences about which [a person] already knew because knowledge of the danger is equivalent to prior notice. No one needs notice of that which he already knows." *Borowicz v. Chicago Mastic Co.*, 367 F.2d 751, 758 (7th Cir. 1966). Given that Susan already thought that the parking stalls were dangerous because they were located close to the store's doors and cars could drive up onto the sidewalk, Ulta did not have a duty to warn Susan of such a danger.

¶ 42 Based on our holding that Ulta did not owe Susan a duty at the time she was injured, we do not address Ulta's alternative argument that it was entitled to summary judgment additionally because it did not proximately cause Susan's injury.

¶ 43             III. CONCLUSION

---

[2]We express no opinion as to whether, or in what situations, a business invitor would have a duty to warn its customers of an alleged danger on adjacent property that it does not own or control.

¶ 44    In sum, we recognize that the duty to provide safe ingress and egress to invitees can, at times, extend beyond the precise boundaries of a landowner's property. *Hanks v. Mount Prospect Park District*, 244 Ill. App. 3d 212, 218 (1993). The cases relied on by plaintiffs extended businesses' duties beyond their property lines because the businesses had taken affirmative actions to appropriate the sidewalk; the walkway was in disrepair and exclusively used to access the business; or the business directly and immediately contributed to the injury such as by simultaneously expelling fighting patrons. This case does not fit into any of these scenarios. Rather, as in *St. Phillips*, Ulta did not owe a duty of care to Susan when she was injured, because the sidewalk on which she was standing, as well as the allegedly dangerous parking lot, were under Fridh's exclusive control. Where the landlord retains such control, "the landlord has the duty to exercise reasonable care to keep those premises in a reasonably safe condition and is liable for a foreseeable injury from a failure to perform such duty." *St. Phillips*, 137 Ill. App. 3d at 644.[3] Finally, Ulta had no duty to warn Susan of the potential dangers of store-facing parking stalls, as Susan testified in her deposition that she was already aware of such dangers. Therefore, the trial court correctly granted summary judgment for Ulta.

¶ 45    For the foregoing reasons, we affirm the decision of the Winnebago County circuit court.

¶ 46    Affirmed.

---

[3]We express no opinion as to whether the sidewalk was in a reasonably safe condition or whether Susan's injury was reasonably foreseeable.